DAVID C. IGLESIAS
United States Attorney
District of New Mexico

Mary C. McCulloch
Assistant U.S. Attorney
201 Third Street NW, #900
Albuquerque, NM 87102
NM State Bar No.
Telephone (505) 346-7274

ELINOR COLBOURN
Senior Trial Attorney
Environmental Crimes Section
U.S. Department of Justice
601 D St., NW, Room 2132
Washington, DC 20004
Telephone (202) 305-0205

# UNITED STATES DISTRICT COURT

## DISTRICT OF NEW MEXICO

United State of America,　　　　　　　)
　　　　　　　　　　　　　　　　　　　)
　　　　　　　　　Plaintiff,　　　　　　)
　　　　　　　　　　　　　　　　　　　)
　　　v.　　　　　　　　　　　　　　　)
　　　　　　　　　　　　　　　　　　　)
Phelps Dodge Tyrone, Inc.,　　　　　　 )
　　　　　　　　　　　　　　　　　　　)
　　　　　　　　　Defendant.　　　　　 )
_____)

CR-**05-1900LFG**

**PLEA AGREEMENT**

Sentencing Guidelines
<u>Are Not</u> Applicable

Pursuant to Rule 11(c)(1)(C), Fed. R. Crim. P., plaintiff, United States of America,

and defendant, Phelps Dodge Tyrone, Inc. hereby agree to the following disposition of

this matter:

## PLEA

Defendant will plead guilty to a single count information charging defendant with

a violation of Title 16, United States Code, Sections 703 and 707(a), a Class B

misdemeanor offense.

## TERMS

Defendant understands that the guilty plea is conditioned upon the following

1



terms, stipulations, and requirements:

## 1. MAXIMUM PENALTIES

a. A violation of Title 16, United States Code, Sections 703, 707(a), by an organization is punishable by a maximum fine of $15,000.00, a maximum term of probation of five years, or both.

b. The Sentencing Guidelines issued pursuant to the Sentencing Reform Act of 1984, do not apply to this violation. USSG § 1B1.9.

c. Pursuant to Title 18, United States Code, Section 3013, the court is required to impose a special assessment on defendant of $50.00. The special assessment is due at the time defendant enters the plea of guilty, but in no event shall it be paid later than the time of sentencing.

## 2. AGREEMENTS REGARDING SENTENCING

a. _Agreement Between the Parties._ Pursuant to Fed. R. Crim. P. 11(c)(1)(C), the United States and defendant agree that the following sentence is the appropriate disposition of this matter:

(1) A fine of $15,000.00 payable to North American Conservation Act Fund pursuant to 16 U.S.C. § 4406(b);

(2) A term of probation of five years, to include the following conditions of probation:

(i) The applicable mandatory conditions of probation, pursuant to 18 U.S.C. § 3563(a)(1) (defendant shall not commit another Federal, State or local crime during the term of probation); 18 U.S.C. § 3563(a)(6)(B) (defendant shall pay a total mandatory assessment under 18 U.S.C. § 3013 of $50.00); (18 U.S.C. § 3563(a)(7) (defendant shall notify the court of any material change in its economic circumstances that might affect its ability to pay restitution, fines, or special assessments).

2

1          (ii) Pursuant to 18 U.S.C. § 3563(a)(1) and § 3563(b)(22), defendant
2   must construct, install, implement and operate the remedial avian protection plan set forth
3   in the document entitled "Tyrone Corrective Action Plan," a copy of which is attached
4   hereto as Exhibit A.  The Tyrone Corrective Action Plan uses the best available
5   information and technologies for the purpose of preventing future bird mortalities related
6   to the bodies of water listed in the plan.  The parties may amend the Tyrone Corrective
7   Action Plan to take account of new management strategies and operational changes at the
8   mine site, to expand the scope of the plan to include new or additional bodies of water, to
9   extend the applicable time period for the plan beyond the five year term of probation, or
10  to modify and refine the avian protection provisions of the plan.  Any such amendment to
11  the Tyrone Corrective Action Plan must have the mutual consent of both defendant and
12  the U.S. Attorney's Office for the District of New Mexico and shall be set forth in a
13  written, duly executed, Memorandum of Understanding entered into prior to the
14  conclusion of defendant's term of probation.  The parties agree that they will not petition
15  the court or otherwise seek a change in the conditions of probation set forth in this
16  subparagraph without the other's consent.

17          (iii)    In consideration of the factors set forth at 18 U.S.C.
18  § 3553(a)(1), (2)(A) and (2)(B), defendant, within the first three (3) months of its
19  probation will make a $15,000.00 contribution to the National Fish and Wildlife
20  Foundation, 1120 Connecticut Avenue NW, Suite 900, Washington, D.C. 20036 to be
21  designated .for avian habitat restoration and/or for Migratory Bird studies in the Gila
22  River ecosystem.  In addition, the government acknowledges a prior contribution of
23  $5,000.00 to a federally licensed New Mexico bird rehabilitator to care for sick and/or
24  injured migratory birds.

25          (iv) Defendant shall create and maintain records of (1) any and all
26  dead and injured or sick birds protected by the ESA and/or MBTA that are found on the

3

1   Tyrone Mine Site within one hundred yards of any pond or facility listed in Exhibit "A,"

2   and (2) operational information produced by the radar hazing equipment that is to be

3   installed pursuant to Exhibit A. The "Tyrone Mine Site" is that property described in

4   Exhibit B hereto. This paragraph does not create an affirmative duty to monitor or

5   otherwise search for dead or injured birds beyond the inspection and monitoring

6   obligations specifically described in Exhibit "A."

7                  (v)  Defendant agrees to allow inspection and copying of the records

8   described in this paragraph upon request by the USFWS with 24 hours advance

9   telephonic notice. Defendant further agrees to allow the USFWS access to the Tyrone

10  Mine Site, upon request and without advance notice to monitor compliance with this Plea

11  Agreement, the Tyrone Corrective Action Plan and for related avian protection purposes.

12  The USFWS may test for pH during the site visits contemplated by this plea agreement at

13  any pond, facility or impoundment covered by the Corrective Action Plan. If during any

14  site visit any dead or injured birds are found, the USFWS shall be allowed to take samples

15  of all pertinent biological matter, and water samples from the associated water body,

16  provided that when such samples are taken (1) splits of all water samples are provided by

17  the USFWS to the Defendants, and (2) the results of any laboratory tests conducted by the

18  government (whether on samples of water or biological matter) are shared with the

19  Defendant in a timely fashion following receipt by the government. Defendant expressly

20  does not grant mine site access for any purpose not described above, including

21  specifically access for the purpose of obtaining information for any civil or administrative

22  proceedings against the defendant, although nothing in this Agreement limits the use the

23  United States may make of the information collected pursuant to this paragraph.

25                 (vi)  Defendant shall notify the USFWS via telephone or email of

26  any mortalities, injuries or sickness of birds protected by the ESA and/or MBTA that are

27  found on the Tyrone Mine Site within one hundred yards of any pond or facility listed in

4

1    Exhibit "A," within four business days of becoming aware of the event, including at a

2    minimum the species, to the extent it can be determined, and location. However, if more

3    than five mortalities occur within any 24 hour period, defendant agrees to notify a Special

4    Agent of the USFWS via telephone of the mortalities, including species and location,

5    within 24 hours of becoming aware of the deaths.

6        b.    <u>Sentencing Recommendation Binding</u>.   Defendant understands that,

7    pursuant to Fed. R. Crim. P. 11(c)(1)(C), the sentencing recommendation in this

8    agreement shall be binding on the Court once the agreement is accepted by the Court.

9    The parties further understand that if the Court rejects this agreement, the defendant shall

10   be afforded an opportunity to withdraw the plea or to persist in its guilty plea with the

11   understanding that the disposition may be less favorable to it than that contemplated by

12   this agreement.

13       c.    <u>Other Agreements</u>    During the period of probation, the United States

14   Attorney's Office for the District of New Mexico and the Environmental Crimes Section

15   of the U.S. Department of Justice agree to exercise their discretionary authority not to

16   prosecute defendant for any taking under the MBTA or ESA that occurs during the period

17   of its probation related to exposure of a bird to the bodies of water identified in Exhibit A

18   provided defendant is in compliance with paragraph 2.a.(2)(ii) above, including but not

19   limited to all timeframes set forth in Exhibit A.

20       d.    <u>Other Rights of the United States</u>    The United States retains the

21   unrestricted right to make any and all statements it deems appropriate to the Probation

22   Office and to make factual and legal responses to any statements made by the defendant

23   or defense counsel or objections to the pre-sentence report or to questions by the court at

24   the time of sentencing.

25   **3.    <u>AGREEMENT TO DISMISS OR NOT TO PROSECUTE</u>**

26       The United States Attorney's Office for the District of New Mexico and the

5

1    Environmental Crimes Section of the Environment and Natural Resources Division of the

2    U.S. Department of Justice, will not prosecute defendant for any offenses committed by

3    defendant, in connection with the unintentional takings of migratory birds related to the

4    bodies of water listed in Exhibit A that have occurred since January 1, 1998, up to and

5    including the date of entry of this plea.   This agreement does <u>not</u>, in any manner, restrict

6    the actions of the United States in any other district nor bind any other United States

7    Attorney's Office.

8    **4.**    <u>**WAIVER OF DEFENSES AND APPEAL RIGHTS**</u>

9      Defendant hereby waives any right to raise on appeal or collaterally attack any

10    matter pertaining to this prosecution and sentence provided the sentence imposed by the

11    Court is as provided for in this agreement.

12    **5.**    <u>**PERJURY AND OTHER FALSE STATEMENT OFFENSES OR OTHER**</u>

13         <u>**OFFENSES**</u>

14      Nothing in this agreement shall be construed to protect the defendant in any way

15    from prosecution for any offense committed by defendant after the date of this agreement,

16    except as explicitly provided above.   Nothing in this agreement shall be construed to

17    protect the defendant in any way from prosecution for any perjury, false declaration or

18    false statement violation committed by the defendant prior to the entry of this agreement.

19    Any information, statements, documents, and evidence which defendant provides to the

20    United States pursuant to this agreement may be used against the defendant in all such

21    prosecutions.

22    **6.**    <u>**REINSTITUTION OF PROSECUTION**</u>

23      If defendant's guilty plea is rejected, withdrawn, vacated, or reversed at any time,

24    the United States will be free to prosecute defendant for all charges of which it has

25    knowledge, and any charges that have been dismissed because of this plea agreement will

26    be automatically reinstated.   In such event, defendant waives any objections, motions, or

Final Version – August 25, 2005

1   defenses based upon the Statute of Limitations, the Speedy Trial Act or constitutional

2   restrictions in bringing of the later charges or proceedings. Defendant understands that

3   any statements made at the time of the defendant's change of plea or sentencing may be

4   used against defendant in any subsequent hearing, trial or proceeding as permitted by

5   Fed. R. Crim. P. 11(e)(6).

6   **7.   DISCLOSURE OF INFORMATION TO U.S. PROBATION OFFICE**

7        a.   Defendant understands the United States' obligation to provide all

8   information in its file regarding defendant to the United States Probation Office.

9        b.   Defendant will cooperate fully with the United States Probation Office.

10  Such cooperation will include truthful statements in response to any questions posed by

11  the Probation Office.

12       c.   The United States agrees to provide to defendant copies of all information

13  in its files regarding the avian mortalities that are the subject of this plea agreement (and

14  the related investigations at the Chino and Morenci mines) including without limitation

15  all information concerning the cause of death of the birds described in paragraph 9 below,

16  within forty-five days of the execution of this plea agreement by defendant.

17  **8.   FORFEITURE, CIVIL, AND ADMINISTRATIVE PROCEEDINGS**

18       a.   Nothing in this agreement shall be construed to protect the defendant from

19  civil forfeiture proceedings or prohibit the United States from proceeding with and/or

20  initiating an action for civil forfeiture.

21       b.   Further, this agreement does not preclude the United States from instituting

22  any civil or administrative proceedings as may be appropriate now or in the future.

23  **9.   FACTUAL BASIS**

24       Defendant further agrees that if this matter were to proceed to trial the United

25  States could prove the following facts beyond a reasonable doubt:

Final Version – August 25, 2005

1      a.      At all times relevant to this plea agreement Phelps Dodge Tyrone, Inc.

2   owned and/or operated the Tyrone Mine in Grant County New Mexico.

3      b.      From on or about September 11, 2000 through September 15, 2000 a

4   Special Agent and a Biologist of the USFWS documented the deaths of at least seventy-

5   three (73) migratory birds on the Tyrone Mine Site.  The carcasses were primarily located

6   near Pond 1A, Pond 2, Pond 1X, and Pond 3X.

7      c.      Low pH values existed in these and other bodies of water, including storm

8   water collection areas, for a number of months prior to the documentation of the bird

9   deaths in September 2000.

10      d.      The low pH in these waters is the result of mining operations at the Tyrone

11   Mine.

12      e.      Between June 24, 2002 and October 13, 2004, an additional forty-four (44)

13   migratory birds died at the Tyrone Mine Site in the vicinity of low pH waters on the Site.

14      f.      The industrial ponds and storm water collection areas at the Tyrone Mine

15   Site contributed to one or more of the bird deaths described above.

16   **10.    DEFENDANT'S APPROVAL AND ACCEPTANCE**

17      a.      The undersigned corporate officer or representative of defendant hereby

18   certifies that he (she) is authorized by the defendant corporation to act on its behalf, to

19   plead guilty to the charge alleged in the Information, and to enter into this plea agreement,

20   and that a corporate resolution so empowering said officer or representative has been duly

Final Version – August 25, 2005

1    made and approved by said corporation.  As defendant's duly authorized representative, I

2    have read each of the provisions of the entire plea agreement with the assistance of

3    counsel and understand its provisions.

4         b.      I have discussed the case and defendant's constitutional and other rights

5    with defendant's attorney.  Defendant understands that by entering a plea of guilty,

6    defendant will be giving up its rights to plead not guilty, to trial to the court, to confront,

7    cross-examine, and compel the attendance of witnesses, to present evidence in its defense,

8    and to remain silent -- all with the assistance of counsel -- and to be presumed innocent

9    until proven guilty beyond a reasonable doubt.

10        c.      On behalf of defendant, I agree to enter its guilty plea as indicated above on

11   the terms and conditions set forth in this agreement.

12        d.      Defendant's guilty plea is not the result of force, threats, assurances or

13   promises other than the promises contained in this agreement.  Defendant agrees to the

14   provisions of this agreement as a voluntary act on its part, rather than at the direction of or

15   because of the recommendation of any other person, and agrees to be bound according to

16   its provisions.

17        e.      Defendant understands that, if it is granted probation by the court, the terms

18   and conditions of such probation are subject to modification by the court at any time.

19   Further, if it violates any of the conditions of its probation, its probation may be revoked

20   and upon such revocation its sentence may be altered.  This provision is subject to the

21   agreement by the U.S. Department of Justice as set forth in the final sentence of

22   subparagraph 2 (a) (2) (ii) above that it will not seek changes to the Tyrone Corrective

23   Action Plan without defendant's concurrence.

9

1    f.    Defendant agrees that this written plea agreement contains all the terms and

2    conditions of its plea and that promises made by anyone (including its attorney), that are

3    not contained within this written plea agreement are without force and effect and are null

4    and void.

5    g.    Defendant is satisfied that its defense attorney has represented it in a

6    competent manner.

7    h.    I am fully capable of understanding the terms and conditions of this plea

8    agreement. I am not now on or under the influence of any drug, medication, liquor, or

9    other intoxicant or depressant, which would impair my ability to fully understand the

10   terms and conditions of this plea agreement.

11

12   __8/26/05__

13   Date                                        Authorized Representative of Defendant

14

15

16

17

18   __8·30·05__

     Date                                        Richard N. Mohr
19                                               President and General Manager
                                                 Phelps Dodge Tyrone, Inc .

20

21

22

23

24

25

26

27

                                              10

## DEFENSE ATTORNEY'S APPROVAL

I have discussed this case and the plea agreement with my client, in detail and have advised defendant of all matters within the scope of Fed. R. Crim. P. 11, the constitutional and other rights of an accused, the factual basis for and the nature of the offense to which the guilty plea will be entered, possible defenses, and the consequences of the guilty plea including the maximum statutory sentence possible.  No assurances, promises, or representations have been given to me or to defendant by the United States or by any of its representatives which are not contained in this written agreement.  I concur in the entry of the plea as indicated above and on the terms and conditions set forth in this agreement as in the best interests of my client.  I agree to make a bona fide effort to ensure that the guilty plea is entered in accordance with all the requirements of Fed. R. Crim. P. 11.


_8/30/05_
Date

John J. Kelly
Attorney for Defendant
Modrall, Sperling, Roehl, Harris & Sisk, P.A.
P.O. Box 2168
Albuquerque, New Mexico 87102

11

Final Version · August 25, 2005

## UNITED STATES' APPROVAL

I have reviewed this matter and the plea agreement.  I agree on behalf of the United States that the terms and conditions set forth are appropriate and are in the best interests of justice.

DAVID C. IGLESIAS
United States Attorney
District of New Mexico

_30 August 2005_
Date

Mary C. McCulloch
Assistant U.S. Attorney

_30 August 2005_
Date

Elinor Colbourn
Senior Trial Attorney

## COURT'S ACCEPTANCE

_8/30/05_
Date

United States Magistrate Judge

K:\dox\client\59287\131\W0513184.DOC

12

Final Version – August 25, 2005

8/25/05
Tyrone
W0511826.DOC

K:\dox\client\5928\131\W0511826.DOC

# PHELPS DODGE TYRONE INC.
## CORRECTIVE ACTION PLAN[1]

| Pond[2] | Settlement Prescription | Installation Date[3] |
|---|---|---|
| Group 1 | Tailing Impoundment's and Associated Stormwater Catchments With Low pH Water | |
| #3X (300ac)<br>#3 (440ac)<br>#2 (420ac)<br>#1A (320ac)<br>#1 (350ac)<br>#1x (380ac) | The six Tailing Impoundments and all associated perimeter stormwater catch basins at the Tyrone Mine will be permanently closed within the five year probation period specified in the plea agreement. All tailing surfaces will be covered with two feet of re-vegetated cover material to eliminate the formation of low pH water. Engineered drainage and erosion control features will be installed to remove water from reclaimed surfaces and prevent or minimize standing water. All perimeter storm water catch basins will be closed such that clean runoff will flow off the reclaimed surfaces into existing tributaries to Mangas Draw.<br><br>Construction on the #3X will commence first followed by the #3. The sequence and timing of the completion of closure (both duration and sequence) at the various impoundments is left to the discretion of Tyrone. The current construction plan for completion of closure for each tailing impoundment is: #3X – 3rd Qtr 2005; #3 – 4th Qtr 2005; #2 – 2nd Qtr 2006; #1A – 1st Qtr 2007; #1 – 3rd Qtr 2007; #1X – 4th Qtr 2007. | Construction commenced 3rd Qtr 2004. Completion of all impoundments 3rd Qtr 2010. |

---

[1] This document constitutes Exhibit "A" to the Plea Agreement executed by Phelps Dodge Tyrone Inc. and the United States on or about August 15, 2005 resolving a one count information charging a violation of Title 16 United States Code §§ 703 and 707(a).

[2] This Corrective Action Plan is accompanied by a map of the various ponds, impoundments, ancillary facilities and other improvements at the Tyrone Mine Site. The maps bear the legend *Tyrone Mine, Migratory Bird Treaty Act Corrective Action Plan* and is dated June 1, 2005.

[3] All new systems and related improvements will have been installed, and all monitoring and hazing procedures will be in place as of the date the Plea Agreement is signed by the parties, except to the extent another date is specified in this column. Firm dates for the completion of construction of the regraded tailing impoundments have not yet been established.

Exhibit "A" To Phelps Dodge Tyrone, Inc. Plea Agreement

During construction, primary storm water ponds on the top surfaces of the impoundments will be consolidated and pumped to the #1X. The capacity and location of pumps to be installed are as follows: #3 – 800 gpm pump to #2; #2 – 800 gpm pump to #1X; #1A – 800 gpm pump to #1 – 800 gpm pump to #1X; #1X – 400 gpm pump to evaporation system and a 400 gpm pump to the mine process water system. The pumping system from the #3 and #2 to the #1X is currently installed. The remaining system will be installed by the end of 4th Quarter 2005. Access to the standing water on the #1X will be improved through the construction of berms and access pads. This will allow for more efficient hazing and neutralization until closure is completed.

Year round daily hazing and monitoring will be conducted on all Tailing Dam Ponds until closure. PH will be checked once a week. Neutralizing operations will continue during periods when low pH water is present. Propane cannons will be operated 24/7 at the #1X. The operation of these propane cannons will be varied by changing the timing on the firing mechanism and by moving the position of the canons to simulate random firing. The frequency of these changes will be determined by the hazing crew for maximum effectiveness.

A fifty acre sprinkler grid system will be constructed on the #1X impoundment and operated on an ongoing basis as weather conditions allow to enhance evaporation. Standing water on the #1X will be returned by pumps and pipeline to the mine's process water system to further reduce standing water on the #1X during construction and prior to final closure.

8/25/05
Tyrone
W0511826.DOC

8/25/05
Tyrone
W0511826.DOC

| Group 2 | PLS Ponds – Low pH Process Water Ponds | |
|---|---|---|
| No. 2 PLS Pond, Mine Water Surge Pond, No. 3 PLS, No.3 PLS Overflow, No.3a thru h small PLS ponds, PLS Feed Pond, No. 2A West PLS, No.2A East PLS overflow, North Racket Sump, East Main Booster Pond, 7B PLS Pond, No. 1 PLS Pond (D Sump), 1B Overflow Pond, No. 1A PLS Overflow Pond | Tyrone has prioritized its strategy at the PLS ponds based on observed bird activity and migratory bird flight patterns.

Once operational, the Mine Water Surge Pond will be monitored daily for bird activity. If a risk to birds is observed, Tyrone will consult with the USFWS and propose additional remedial measures to reduce avian risk.

The No. 1 PLS pond and North Racket Sump will have a monofilament flight interrupter system installed and maintained. The monofilament spacing will be tightened to between 6 and 12 inches. The monofilament will have reflective flash tape tied on it at intervals to make it visible and reduce the likelihood of bird entanglement. Tyrone will continuously drain the #1 PLS Pond when sufficient quantities of water are present to pump, and will continue to minimize the amount of water present in this facility for the duration of the probation period. Tyrone will also deploy propane cannons and rotate the location at these two facilities when water is present.

A radar activated automated hazing system will be installed at the No. 3 PLS and No. 3 PLS Overflow ponds. The 2A West PLS will be covered within 90 days of signing the plea agreement.

Hazing and monitoring will occur at all Group 2 PLS ponds as needed. All Group 2 Ponds (except those deep within the mine area, namely – No. 2 PLS Pond, No. 2A East PLS Overflow, East Main Booster Pond, 7B PLS Pond) will be inspected daily for bird activity. The exceptions to daily inspections above will be inspected on a weekly basis for bird activity. If birds are observed using these excepted ponds, hazing activities will begin immediately. The current hazing crew fluctuates in size (between 2 and 6 dedicated people) depending on the season. The crews are | 1 PLS and North Racket – Monofilament Flight interrupters installed by 30 days following execution of the plea agreement.

No. 3 PLS and Overflow – Automated radar activated Hazing Devices tested and installed within 180 days following execution of the plea agreement. |

scheduled to cover the dawn and dusk hours when new use of low pH ponds by birds is most likely to occur. Trained hazing personnel will be available on-site seven days a week for the duration of the probation period.

Exhibit "A" To Phelps Dodge Tyrone, Inc. Plea Agreement

| Group 3 Mine Ponds/Pit Lakes | Pit Bottoms and Mine Stormwater Ponds – Moderate to Low pH Water | |
|---|---|---|
| Main Pit, Valencia Pit, Copper Mountain Pit, Savanna Pit, Gettysburg Pit (a), Gettysburg Pit, San Salvador Hill Pit, South Rim Pit, Savanna Pit Seepage Sump, Niagara Storm water, Cu Mtn a water through e, 7C Rock North Seep, Oak Grove Pond, 2A (a and b), Precipitation Plant Launders, Lube Shop Pond, 3A Storm water Pond, 8 Seep Pond 5E Pond, No.1A Storm water Pond, BMCC 2(b), Ohio Dam, Little Rock South, Little Rock North | All of these facilities are considered low risk based on actual observation of bird activity. All water bodies in this group will be monitored for bird activity at least twice per month (in addition to normal operational observations) and hazing will occur if bird activity is observed. The policy and process for hazing if bird activity is observed is the same as described above in Group 2.

Significant water management activities have been instituted at these sites to mitigate potential risk to birds. The 7C Seep has a gravity drainage system in place that drains and consolidates water into the No. 1A PLS Overflow Pond. The BMCC 2 (b) has a pipe system installed to pump water into No. 1 PLS Pond when water accumulates. The Ohio Dam, Little Rock South and Little Rock North have gravity drains that keep the ponds empty and consolidate water into the 1X-1 Pond. Copper Mountain (e) is neutral water. Copper Mountain (a) through (d) ponds are drained either by gravity or pumping and consolidated at the 5E Pond. The No. 1A Stormwater Pond has a pumping system and is dewatered whenever there is sufficient accumulation of stormwater in the pond. These systems will be maintained on an ongoing basis as part of the corrective action plan. | Ongoing |

8/25/05
Tyrone
W0511826.DOC

8/25/05
Tyrone
W0511826.DOC

| Group 4<br>Miscellaneous<br>Ponds | Storm Water Ponds and Plant Ponds With Neutral pH. | |
|---|---|---|
| Plant Oxidation Ponds (a), Plant Oxidation Pond(b), Land BMCC 2(a) Farm and Stage Pond, Other Thickeners (five in all), Keener Pond (a), Keener Pond (b),SPCC, Crusher Pond, BMCC 2 (a). | All of these ponds are considered low risk due to the neutral pH. These ponds are monitored for bird activity at least monthly. Since capping of the Burro Mountain Tailing in 2001, the water in BMCC 2(a) has either not accumulated or has remained neutral. The entire Burro Mountain Tailing Impoundment (including this pond) was closed in 2004. | Ongoing |

| Group 5 Miscellaneous Ponds | Fresh Water Ponds Maintained for Waterfowl Habitat | |
|---|---|---|
| CB1XM, Fleming Tank, Oak Grove Tank and Mangas spring and Valley Well. | Tyrone has developed a smart hazing strategy to address the large numbers of birds found near the mine site as a result of the fall migration patterns. Tyrone is committed to managing four ponds on site as safe havens for migratory birds. All of the ponds have been constructed and the locations are shown on the map. These ponds have been filled with water pumped from Tyrone's fresh groundwater supplies. The new ponds have been constructed with input from wildlife experts to attract waterfowl to these areas with the intent of providing a resting and feeding area away from the mine. One of these ponds, the CB1XM pond is currently filled with fresh water and Tyrone has observed bird use for the past two years. Tyrone sees this as a component of its overall hazing program. When bird activity is occurring, judgments will be made to direct birds toward these habitat ponds and away from low pH water ponds. Tyrone will maintain these ponds for the duration of the probation period. | Fully operational |

# LEGAL DESCRIPTION

The "Tyrone Mine Site", as the term is used in the Plea Agreement, consists of the following described lands located within Grant County, New Mexico; all or portions of Sections 3, 4, 5, 8, 9, 10, 11 and 14 of T19S, R15W; and Sections 17, 18, 19, 20, 21, 28, 29, 30, 33, and 34 of T18S, R15W; Sections 1, 2, 11, 12, 13, and 24 of T18S, R16W; and Sections 34 and 35 of T17S, R16W, Sections 19, 20, 29, and 30 of T19S, R14W; and Sections 10, 11, 13, 14, 15, 16, 21, 22, 23, 24, 25, 26, 27, and 28 of T19S, R15W,

Exhibit B to Plea Agreement